In re John McCandish KING, debtor in proceedings for an arrangement, John M. King, debtor, Appellant,

v.

Charles A. BAER, Trustee, Appellee.

In re KING RESOURCES COMPANY and International Resources Limited, debtors in proceedings for reorganization of corporations, John M. King, Appellant.

The COLORADO CORPORATION, Appellant,

v.

Charles A. BAER, Trustee, Appellee.

Nos. 72–1474, 72–1515 and 72–1516.

United States Court of Appeals, Tenth Circuit.

Argued and Submitted March 28, 1973.

Decided June 19, 1973.

Rehearing Denied Aug. 13, 1973.

Certiorari Denied Dec. 3, 1973. See 94 S.Ct. 577.

Jack Balzersen, Dallas, Tex., for John M. King, appellant.

William G. Sumners, Jr., Denver, Colo., for The Colo. Corp., appellant.

John S. Pfeiffer, Denver, Colo. (Robert J. Kapelke, Denver, Colo., on the brief), for appellee.

Before HILL, Circuit Judge, DURFEE, Judge,* and HOLLOWAY, Circuit Judge.

HILL, Circuit Judge.

These three appeals from the District of Colorado stem from proceedings had under Chapters X and XI of the Bankruptcy Act. They involve common questions, thus the consolidation. No. 72–1474 arises out of the Chapter XI arrangement proceedings instituted by John M. King, debtor, who is appellant in that appeal. Nos. 72–1515 and 72–1516 both arise from proceedings had in the Chapter X matter instituted by King Resources Company and International Resources Limited as debtors in the proceedings for reorganization. John M. King is appellant in the first case, and The Colorado Corporation is appellant in the second case. Charles A. Baer, trustee in both bankruptcy proceedings, is appellee in each of the three appeals.

The controversies originate in sales by King Resources Company of two undivided ⅟₆₄th interests in Canadian federal oil and gas exploration permits. The contracts under which the interests in the permits were purchased outlined the mode of payment. Each ⅟₆₄th interest was to be sold for $5,218,241. The first payment of $260,912.05 was to be paid by the purchaser within fifteen days from the date of execution of the contract. Subsequent payments of $413,110.75 were to be made on June 1 and October 1 of each year from 1970 through 1975 in payment of the contract purchase price. The two purchase contracts which form the basis of these appeals were executed separately by John M. King and John W. Mecom.

King executed a contract to purchase a ⅟₆₄th interest on December 31, 1969, and made the initial payment of $260,912.05. He made no further payments, and now asserts his failure to make these payments was because King Resources Company had failed to satisfactorily account for exploration work and had generally failed in its duties to the purchasers. King also contends that King Resources Company owed him sufficient amounts of money on other activities to more than offset his payment obligation under the contract. The King Resources Company trustee disagreed and claimed that King Resources, after allowance of all proper payments and credits to King, was entitled under the contract to an additional $1,085,803.38 on December 31, 1971.

On May 19, 1971, the United States Internal Revenue Service (IRS) made jeopardy assessments against King personally totaling approximately $5,358,000, filed its notice of lien, and made levies. On June 1, 1971, King filed his original petition for a Chapter XI arrangement under the Bankruptcy Act (11 U.S.C. § 701 et seq.). On that same day, the arrangement proceeding referee issued, ex parte, an order staying suits and restraining levy, attachment or execution against King or his property (11 U.S.C. § 714).

On August 14, 1971, King Resources filed its petition for Chapter X reorganization under the Bankruptcy Act (11

* Court of Claims, sitting by designation.

555

U.S.C. § 501 et seq.). The petition was approved and the appellee was named as trustee. On March 16, 1972, the trustee filed with the King arrangement referee an application to modify the above referred to order staying suits. Attached to this application was the trustee's proposed application to the King Resources reorganization judge for an order to show cause why the executory contract between King personally and King Resources for the purchase of the interest in the exploration permit should not be rejected.[1] King resisted the trustee's application to modify the stay order on the basis that (1) the filing of the application for permission to reject an executory contract would constitute the commencement of suit in contravention of the stay order; (2) the 1/64th interest was a vested property interest and therefore subject to the exclusive jurisdiction of the King arrangement referee and beyond the jurisdiction of the King Resources reorganization judge to authorize rejection as an executory contract; and (3) the device of rejection of an executory contract cannot be used to divest a purchaser of his vested title. The referee on April 5, 1972, granted the appellee's application to modify the stay order, found that the application to reject the executory contract did not constitute the commencement of a suit, and left to the court the resolution of whether the contract was an executory contract. Immediately after this order was issued, the trustee filed with the court his application to reject the executory contract. The court ordered King to show cause why the executory contract should not be rejected by the trustee.

King, in the meantime, had filed an appeal to the United States District Court for review of the referee's order that the application to reject the contract did not constitute the commencement of a suit. On June 2, 1972, the district court affirmed the referee's decision. That decision of the district court has been appealed to this court

and constitutes appeal No. 72–1474. King contends that the application to reject the contract as an executory contract was a "suit" and therefore should have been subject to the stay order.

On April 19, 1972, King filed his motion in the King Resources reorganization proceedings to stay final determination of the trustee's application to reject the executory contract pending the district court's review of the arrangement referee's order that the application to reject did not constitute a suit. King also presented a motion to dismiss the trustee's application on the basis that he had acquired a vested property right in the permits under the terms of the contract; therefore there was no executory contract over which the reorganization court could exercise jurisdiction to authorize rejection.

Trial on the merits of the trustee's application to reject the executory contract was held after King had been notified by the district court of its intention to affirm the arrangement referee's determination that the application of the trustee to reject the executory contract did not constitute the commencement of a suit within the proscriptions of the stay order. King initially asked that the trial be stayed pending his appeal to this court from the district court's affirmance of the arrangement referee's decision. This motion, as were motions to dismiss for lack of jurisdiction, for failure to join the IRS as an indispensable party, and for summary judgment, was denied by the trial court. After trial on the merits, the King Resources reorganization court ruled the contract was an executory contract and authorized the appellee to reject it. That decision is the basis of appeal No. 72–1515. In that appeal King asserts error in the trial court's refusals to grant his motion to stay, his motion to dismiss for lack of jurisdiction on his allegation that title had vested and therefore there was no executory contract, and his motion to dismiss for failure to join the

1. 11 U.S.C. § 516(1).

IRS as an indispensable party. He also attacks the order authorizing rejection of the contract and contends this order, by implication, either erroneously divested him of his vested title or incorrectly found that title had not vested.

The Colorado Corporation, appellant in No. 72–1516, raises basically the same contentions raised by King in appeal No. 72–1515. On December 24, 1969, John W. Mecom executed a contract for the purchase of an undivided ⅓₆₄th interest in Canadian federal oil and gas exploration permits being sold by King Resources. The terms of the contract were the same as that of King. Mecom made the initial payment of $260,912.05 and, like King, made no further payments as required by the contract. On May 24, 1971, The Colorado Corporation acquired the Mecom interest. On April 5, 1972, the trustee filed with the reorganization court his application to reject the contract as an executory contract. That court issued its order to The Colorado Corporation to show cause why the executory contract should not be rejected. The Colorado Corporation responded with its motion to dismiss in which it alleged its acquisition from Mecom was of his vested property interest which he had acquired under the contract. It also challenged the jurisdiction of the reorganization court and contended both the contract and the interest acquired were no longer executory. Trial on the merits was held concurrently as to both contracts. The trial court, following trial on the merits and the pronouncement of its order permitting rejection of the executory contract with King, made the same order equally applicable to The Colorado Corporation and authorized the trustee's rejection of the executory contract. The Colorado Corporation in its appeal raises issues which were also raised by King in No. 72–1515. These contentions will be dealt with concur-

rently, and therefore need not be separately stated at this juncture.

### No. 72–1474

In this appeal, it is the appellant King's contention that the application to reject the executory contract was a suit which should have been stayed under the provisions of the arrangement referee's stay order. As the decision to issue an injunction staying the commencement of suits is committed to the discretion of the bankruptcy referee,[2] we do not deem it necessary to determine the status of the trustee's application to reject the executory contract as a suit. So too the decision of the referee to vacate a previously issued restraining order or to allow other proceedings relating to the debtor's property is discretionary.[3] We find no abuse of the arrangement referee's discretion in permitting the trustee's application to reject the executory contract.

We now consider those issues raised only by appellant King in No. 72–1515 regarding asserted errors committed by the King Resources reorganization court. The first error challenges the court's denial of King's motion to stay, pending appeal of the district court's approval, proceedings relating to the trustee's rejection application. King contends the appeal in that case involved the basic question of the jurisdiction of the arrangement court and should, therefore, have been determined before this proceeding was allowed to continue. Appellant's reliance on Texaco, Inc. v. Liberty Nat'l Bank & Trust Co., 464 F. 2d 389 (10th Cir. 1972), is misplaced. In the instant case each of the two courts was a court of bankruptcy, and each was exercising its own exclusive jurisdiction of the bankruptcy proceeding before it. In this situation the granting or denial of a motion to stay is within the sound discretion of the court.[4] There was no abuse of discretion.

---

2. In Re Schokbeton Indus., 449 F.2d 321 (5th Cir. 1971) ; In Re Laufer, 230 F.2d 866 (2d Cir. 1956).

3. *See* Mundt v. Southland Savings & Loan Ass'n, 354 F.2d 81 (9th Cir. 1965).

4. *See* Pet Milk Company v. Ritter, 323 F. 2d 586 (10th Cir. 1963).

King next contends the court erroneously denied his motion to dismiss for failure to join the IRS as an indispensable party. The contention is that the IRS, by virtue of its jeopardy assessments and levy on the property of King, had an interest in this property also and therefore should have been joined. The law is clear that "before an executory contract should be rejected, a judicial hearing and inquiry, at which interested parties might be heard, should be held, and that an executory contract could be rejected only with the permission of the court. . . . ." Texas Importing Co. v. Banco Popular de Puerto Rico, 360 F.2d 582 (5th Cir. 1966). The notice requirements for the rejection of executory contracts require only notice to the parties to such contracts. Any notice to other parties lies in the discretion of the judge.[5] It is apparent that the IRS was not entitled to any form of notice regarding the rejection of the executory contract. We note, however, that the trial court ordered that notice be given to creditors who had filed statements under §§ 210 and 211 of the Bankruptcy Act, 11 U.S.C. §§ 610, 611. The trial court further found that the IRS did have notice of the hearing. Their failure to attend the hearing may properly be taken as indicative of their intention not to appear. The IRS was not an indispensable party to the rejection hearing.

### Nos. 72–1515 and 72–1516

The remaining contentions are raised by appellants in both No. 72–1515 and No. 72–1516 and will be jointly resolved in this opinion. The first of these arguments challenges the determination by the reorganization judge that the contract was executory and therefore rejectable. The challenge takes various forms; however the basic contention is that a property interest in the exploration permits had vested under the contract, and therefore the contract no longer remained executory. Appellants urge the contract was beyond the jurisdiction of the reorganization court to reject, but rather was within the exclusive jurisdiction of the arrangement court. In Workman v. Harrison, 282 F.2d 693, 699 (10th Cir. 1960), we upheld the rejection of a contract which "was then executory in nature, neither party having completely performed and the obligations of each remaining complex." Our decision there was based on the highly speculative probability of success and the additional expenditure of large sums of money which made the continued performance of the contract both "burdensome and risky." We hold the trial court here correctly found the contract to be executory, and properly permitted its rejection.

Appellants next assert error in the reorganization court's rejection of the executory contracts without also requiring restitution of the purchase price paid by each under the contracts. Rejection of the executory contract constitutes a breach of contract as a matter of law which entitles the other party to the contract to assert a claim for such breach for determination by the court.[6] There is no basis for the requirement of restitution upon the rejection of the executory contract.

Appellants last challenge the decision to reject the executory contract as not being warranted by the dictates of equity or sound business judgment.[7] The rejection of an executory contract is committed to the discretion of the judge, and will be reversed only on a showing

---

5. 11 U.S.C. § 516 provides: "Upon approval of a petition, the judge may, in addition to the jurisdiction, powers and duties in this chapter conferred and imposed upon him and the court—(1) permit the rejection of executory contracts of the debtor, except contracts in the public authority, *upon notice to the parties to such contracts* and to such other parties in interest as the judge may designate." (Emphasis added).

6. Workman v. Harrison, 282 F.2d 693 (10th Cir. 1960).

7. Group of Institutional Investors v. Chicago, M., St. P. & P. R. Co., 318 U.S. 523, 63 S.Ct. 727, 87 L.Ed. 959 (1943).

of abuse of that discretion.[8]  We find no such abuse here.

Each of the judgments appealed from is affirmed.

---

8.  6 Collier on Bankruptcy, ¶ 3.23 [4] at 571.