**In re SUN RAY BAKERY, INC., Debtor.**

**Bankruptcy No. 80–580–JG.**

United States Bankruptcy Court, D. Massachusetts.

Aug. 20, 1980.

Gary Cruickshank, Riemer & Braunstein, Boston, Mass., for debtor.

Shirley A. Bedor, Andover, Mass., for Franklin Finley, John Stark & Bart Miller.

MEMORANDUM AND ORDER ON DEBTOR'S MOTION FOR AUTHORITY TO REJECT EXECUTORY CONTRACTS: EXCLUSIVE FRANCHISE AGREEMENTS WITH FRANKLIN FINLEY, JOHN STARK AND BART MILLER

JAMES N. GABRIEL, Bankruptcy Judge.

The debtor herein, Sun Ray Bakery, Inc. (Bakery) filed a voluntary petition for reorganization under Chapter 11. Subsequently, three motions for authority to reject executory contracts were submitted by the Bakery and set for hearing. Those applications have been consolidated for the purposes of this opinion as each contract is substantially the same. (Motion for Authority to Reject Executory Contract: Exclusive Franchise Agreement with Franklin Finley; Exclusive Franchise Agreement with John Stark; Exclusive Franchise Agreement with Bart Miller) The contracts, entitled "Consignment Agreement," granted to the respondents an exclusive franchise, within a stated territory, to distribute the Bakery's products.

The debtor contends these are executory contracts within the provisions of 11 U.S.C. Section 365 and may be rejected as onerous and burdensome to the Bakery. Section 365 provides in relevant part:

(a) Except as provided in Section 765 and 766 of this Title and in subsections (b), (c), and (d) of this Section, the Trustee, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.

Respondents, however, have argued that, taken as a whole, the contracts are a purchase of exclusive distribution rights subject to conditions subsequent which have no actual bearing on the executory nature of the contracts.

The Code does not define executory contracts in Section 365. The legislative history, however, sheds light on the term by stating that executory contracts "generally includes contracts on which performance remains due to some extent on both sides." *House Report No. 95–595*, 95th Congress, 1st Session (1977) 347; *Senate Report No. 95–989*, 95th Congress, 2d Session (1978) 58, U.S.Code Cong. & Admin.News 1978, pp. 5787, 6303.

In the case at bar both parties were, at the time of filing, subject to an obligation of continuing performance under their respective contracts. The Bakery had an obligation to consign and deliver sufficient quantities of products for distribution, and the consignees had an obligation to distribute those goods according to contract terms

and to pay the purchase price when invoiced.

■ In the context of bankruptcy, the concept of the executory contract must be defined in the light of the purpose for which the trustee is given the option to assume or reject. This court finds compelling the definition propounded by Professor Countryman, that an executory contract is one "under which the obligation of both the bankrupt and the other party to a contract are so far unperformed that failure of either to complete performance would constitute a material breach excusing the performance of the other." Countryman, *Executory Contracts in Bankruptcy*; Part I, 57 Minn.L.Rev. 439 at 460 (1973). See also: Countryman, *Executory Contracts in Bankruptcy*; Part II, 58 Minn.L.Rev. 479 (1974). In the instant case, in spite of full payment for the exclusive distributorship rights, if the contracts continued in effect, respondents still had material performance obligations.

■ This court therefore finds that the contracts are within the intended definition of executory contracts under Section 365 and accordingly, may be rejected.

Respondents have argued that the case of *King v. Baer*, 482 F.2d 552, cert. denied 414 U.S. 1068, 94 S.Ct. 577, 38 L.Ed.2d 437, can be distinguished. This court does not agree. In *King*, the court found that the contract for the purchase of an interest in an oil and gas exploration permit was executory. The court rejected the argument that the property interest in exploration permits had vested where neither party had completely performed and the obligations of both remained complex. In *King*, as here, neither party had completed its performance.

Respondents contention in the case at bar that the franchisees, by tendering full payment, had purchased a vested, exclusive right is untenable. According to the terms of the contract, the exclusive distributorships granted to the consignees were subject to complete divestment upon the option of the debtor–either with or without cause.

To say that the purchase of the exclusive franchise was a single, final, complete and irreversible act flies in the face of the contract itself. The contract before me fits within all accepted parameters of an executory contract.

In this Court's opinion, however, the better procedure to have been followed by the Bakery would have been to terminate the contract in accordance with the provisions therein. The Court is at a loss to understand why the debtor failed to do so.

Paragraph 23 of the contract provides for the duration of the consignment agreement. "This agreement shall continue in effect until terminated in the manner provided in paragraph 18, 19, 20 or 21." Paragraph 19 gives the Bakery "the right in its discretion to terminate (the) agreement without cause upon written notice to the Consignee." Paragraph 19 also contains a liquidated damages clause which provides that "upon termination . . . the Bakery will pay to the Consignee a sum equal to three (3) times the average weekly volume for the last ten (10) full consecutive weeks of business plus ten percent (10%)."

According to the provisions in the contract itself, the debtor has the right to terminate the exclusive franchise upon written notice to the consignees, subject to a claim for damages as provided therein.

Such termination clauses in agency or distribution contracts of indefinite duration, allowing termination with or without cause, have been upheld as enforceable. *Corenswet, Inc. v. Amana Refrigeration, Inc.*, 594 F.2d 129 (5th Cir. 1979); *Rockwell Engineering Co. v. Automatic Timing and Controls Co.*, 559 F.2d 460 (7th Cir. 1977); *Des Moines Blue Ribbon Distributors, Inc. v. Drewrys Limited, U.S.A. Inc.*, 256 Iowa 899, 129 N.W.2d 731, (1964); *Zapatha v. Dairy Mart, Inc.*, —— Mass. ——, 408 N.E.2d 1370.

The motion of the debtor, however, has sought to reject these contracts under the provisions of Section 365 of the Code. Consistent with the above findings, that these contracts are executory, and burdensome to this estate, debtor's motions are hereby ALLOWED.